SNOW VS. THE STATE.

An indictment charged the uttering of a forged instrument purporting to be a genuine order for money, commonly called a school order, of a certain school district in this state, and purporting to be signed by the clerk and director of said district, and set forth a copy of the order (which was addressed to the treasurer of the district): *Held*, that whether or not it is essential that an indictment in such a case should aver positively that the district was legally organized and duly authorized to issue orders, it should at least aver that the forged order which was altered *purported* to be one of a corporation duly authorized to issue it.

The case of *The State vs. Morton*, 8 Wis., 352 (in which it was held that to sustain an indictment for uttering a counterfeit bill, purporting to have been issued by a bank in another state, proof must be made of the existence of the bank and its authority to issue bills,) is commented on in this case.

ERROR to the Circuit Court for *La Crosse* County.

The plaintiff in error was indicted for uttering and publishing a false and forged school order. The indictment, with specification of time and place, charged that the said *Snow*, " with force and arms, having in his custody and possession a certain false, forged and counterfeited paper writing, purporting to be a true and genuine order for money, commonly called a school order, of school district number two in the town of Jackson, and purporting to be signed by D. A. Kennedy, district clerk, and also by J. F. Kilmer, as the director of said school district number two, the tenor of which said last mentioned false, forged and counterfeited paper writing, *   *   *   is as follows: [Here followed a copy of

the order] falsely, &c., &c., did utter and publish as a true and genuine order for money," &c. Plea, "Not Guilty." On the trial, D. A. Kennedy was introduced as a witness for the prosecution, and the paper purporting to be a school order, of which a copy was set forth in the indictment, was shown to him ; and the witness testified that his own name and that of J. F. Kilmer, subscribed thereto, were not their genuine signatures. Said paper was then offered in evidence, but was objected to by the defendant below on the following grounds : 1. That the prosecution had not proven that there was any such school district in existence as school district number two in the town of Jackson. 2. Because it was not alleged in the indictment that school district number two was a legally organized district, or a district *de facto*. 3. Because the indictment did not allege that school district number two was situated in the town of Jackson and county of La Crosse. 4. Because it was not alleged in the indictment that said district was a corporation existing under the laws of this state, or that it had a legal existence and was authorized and empowered to issue any orders. The court overruled the objection. The record shows many other rulings of the court which were excepted to by the defendant ; but as they were not passed upon by this court, they are here omitted.

The jury found a verdict of "guilty."

*Montgomery & Tyler*, for plaintiff in error, cited *State vs. Morton*, 8 Wis., 352 ; *People vs. Smith Davis*, 21 Wend., 309 ; *People vs. Peabody*, 25 id., 472 ; *Hess vs. State*, 5 Ohio, 6 ; *De Bow vs. The People*, 1 Denio, 9 ; *Commonwealth vs. Carey*, 2 Pick., 47 ; *Com. vs. Morse*, 2 Mass., 128 ; *Portsmouth Livery Co. vs. Watson*, 10 Mass., 91 ; 2 Bish. Cr. L., §§ 493, 443.

*James H. Howe*, Attorney General, for the state :

It was not necessary to prove the legal existence of the school district in order to sustain the indictment. The statute, R. S., chap. 166, sec. 1, punishes the false making of any order for money. The indictment sets out a copy of what purports to be such an order. It is signed by officers authorized by law (chap. 23, sec. 32) to draw such an order, and is directed to the proper officer to pay it. It is in all respects

formal and is *valid upon its face.* The false making of any instrument valid on its face, though invalid because of some extrinsic facts or circumstances, is forgery. *People vs. Galloway,* 17 Wend., 540 ; 2 Bishop on Cr. Law, § 444, and cases there cited ; *Regina vs. Pike,* 2 Moody, 70 ; 2 Russ. on Crimes, 343. Sec. 11, chap. 166, R. S., expressly provides that an order purporting to be signed by officers of a corporation, may be forged though the corporation never in fact existed.  2. The fact that the indictment charges an intent to defraud the school district, does not render it necessary to prove the legal existence of the district. The statute (chap. 166, sec. 12) provides that it shall only be necessary to aver an intent to defraud, without naming any particular person. "It is a general rule, that to sustain the indictment, if the proofs correspond with the allegations   *   *   which are in point of law essential to the charge, it will suffice." 1 Ch. Cr. Law, 293 ; *United States vs. Vickery,* 1 Har. & Johns., 427 ; *Com. vs. Hunt,* 4 Pick., 252 ; *Com. vs. Lewis,* 1 Met., 151 ; *Regina vs. Nash,* 12 E. C. L., 578.

*By the Court,* PAINE, J.   We have come to the conclusion that the indictment was defective in not averring that the order alleged to have been forged, purported to have been the order of a school district duly authorized for that purpose by the laws of this state.   We do not say that it was essential to aver positively that the district was legally organized, and duly authorized to issue orders, but that it must at least be averred that the forged order which is uttered *purports* to be one of a corporation duly authorized to issue it.   Much discussion has been had in respect to the necessity of proving the legal existence of the corporation in such cases, and it has been often held under statutes substantially like ours, that this is not necessary. It is said that the phrase "duly authorized for that purpose" was not used with a design of requiring legal proof of the existence of the corporation, but is itself qualified by the word "purporting," which precedes it. *People vs. Davis,* 21 Wend., 312–313 ; *People vs. Peabody,* 25 id., 472; *State vs. Hayden,* 15 N. H., 359. This court, however, would seem to have held in *The State*

VOL. XIV—31

June Term, 1861.

SNOW
v.
THE STATE.

December 11

*vs. Morton,* 8 Wis., 352, in apparent conflict with those authorities, that it is necessary, under our statute, to prove the legal existence and authority of the corporation. If that decision is to be held conclusive on the question, then it would be very clear that this indictment is defective in not containing an express averment that the school district was an existing corporation duly authorized, &c. But the report does not show a very full consideration of the question, and without resting our decision upon that, we are still of the opinion that even within the reasoning of those other authorities, the indictment should have averred in the language of the statute, that the order purported to be the order of a district duly authorized, &c. Such was the form of the indictment in all those cases, and such is the language of the statute. Section 4, chap. 166, R. S., punishes the forgery of any note, bank bill, draft or other evidence of debt, " issued by any corporation or company duly authorized for that purpose," &c. This section, it is true, does not contain the word " purporting," and whether the authorities above referred to would be applicable to an indictment under it may be questionable. But section 6, which punishes the passing of any such forged instrument with the intent to defraud, does contain that word. It punishes the passing of any such instrument, " issued, or purporting to have been issued, as is mentioned in the fourth section," &c. We suppose this indictment was found under this 6th section, and that even upon the construction of the cases referred to, it was essential to allege that the order purported to be the order of a corporation duly authorized for that purpose.

The distinction between the allegation that the forged instrument purported to be that of a corporation duly authorized, and the allegation that the corporation referred to was in existence and duly authorized, is clear. The first allegation would be proved by showing an instrument purporting to be such an instrument as the corporation or officers making it would be authorized in law to make, provided such corporation or officers were in existence. This offense might therefore be committed though the particular corporation whose name was used might not have a legal existence.

The paper would purport on its face to be that of a corporation duly authorized, though owing to extrinsic facts it might be made to appear that it was not duly authorized. But if a school district should issue bank bills, or a town should issue school orders, or any corporation should issue paper showing on its face that it was such paper as such a corporation had no authority to issue under any circumstances, it could not well be said that such paper would purport to be that of a corporation duly authorized. There seems, therefore, much force in the reasoning of the cases referred to, that the design of the statute was to describe paper appearing on its face to be such as was calculated to defraud, and was not to require proof of the actual legal existence and authority of the corporation whose name was used. But as already shown, this indictment was defective under either theory, and the prisoner's objection to the admission of the order offered was for that reason well taken.

The judgment is reversed.