MISSOULA TRUST & SAVINGS BANK, Respondent, *v.*
BOOS et al., Appellants.

(No. 7,760.)

(Submitted February 2, 1938.   Decided March 9, 1938.)

[77 Pac. (2d) 385.]

*Mr. Elmer E. Hershey,* for Appellants, submitted a brief, and argued the cause orally.

*Messrs. Pope, Smith & Smith,* for Respondent, submitted a brief; *Mr. Russell E. Smith* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

R. R. Jones and wife on September 28, 1911, executed and delivered a note for $1,075, maturing two years after date. A real estate mortgage was executed and delivered by them, of even date, to secure the payment of the note. Theresia Boos thereafter purchased the note. The interest was paid up to September 26, 1935, but no payments were made on the principal sum. Mrs. Jones died and thereafter her husband died on April 2, 1936. Theresia Boos filed a petition as a creditor of the estate of R. R. Jones, deceased, on July 3, 1936, requesting the appointment of Herbert W. Steiger as administrator of the

estate, and he was appointed on July 14, 1936. He qualified by giving a bond in the sum of $100, and letters were issued to him on July 15, 1936.

Theresia Boos filed action for the foreclosure of the mortgage, naming the administrator and the plaintiff herein as defendants. As to the interest of the plaintiff herein, it was alleged in the complaint that it "claims some interest or lien upon said property but the same, if any, is inferior and subsequent to the claim of this plaintiff." The prayer of the complaint was for a judgment for the principal, interest, attorneys' fees, cost of suit, foreclosure of the mortgage, and all other proper relief. The administrator admitted service of process in the action on the date of its filing, and the plaintiff was served the following day. No appearance in the action was made by either defendant. Decree was entered on August 18, 1936. The property was sold on September 9 thereafter for the full amount of the judgment and all costs. The day preceding this sale plaintiff commenced this action against Theresia Boos and the administrator, seeking to set aside the decree of foreclosure upon the ground that it was procured through extrinsic constructive fraud as against this plaintiff, as a general creditor of the estate, and on behalf of all other creditors similarly situated. After issue was joined a trial was had before the court, resulting in findings, conclusions, and judgment in favor of the plaintiff. The appeal is from the judgment.

No affidavit of renewal of the mortgage had been filed within eight years and sixty days after the maturity of the debt secured by the mortgage, in the office of the county clerk and recorder as required by section 8267, Revised Codes; nor was there any renewal or extension agreement filed or recorded within the provisions of section 8264. Plaintiff was a general creditor of the estate, possessing no lien against the property described in the mortgage. The failure to file the renewal affidavit within the provisions of section 8267 occurred long before the section was amended in its present form in 1933; hence, what we are about to state is said with reference to that section

prior to its amendment, and is not to be understood as a construction of the section as it now exists.

The debt here was not barred by the general statute of limitations as between the mortgagor and the mortgagee. If the debt be kept alive, the mortgage is good even after the expiration of the eight years from the maturity of the note (*Leffek* v. *Luedeman*, 95 Mont. 457, 27 Pac. (2d) 511, 514, 91 A. L. R. 286, and cases therein cited), and one who accepts a conveyance of the mortgaged property from the mortgagor while the mortgage is good and valid is subject to the same rule. (*Hillsdale College* v. *Thompson*, 99 Mont. 400, 44 Pac. (2d) 753, and cases there cited.) But the mortgage, even though the debt is alive, is invalid where there was no compliance with section 8264 or 8267 as against a creditor who is in a position to assert the invalidity of the mortgage, or others who are similarly situated.

It is the theory of plaintiff's case that, as a general creditor, it was in no position to assert the invalidity of the mortgage, for it could not fasten a lien on the mortgaged property, and since the estate was insolvent it was the right and duty of the administrator to assert the invalidity of the mortgage, and in the circumstances of the case the failure of the administrator to set up the defense was constructively in fraud of its rights. Hence it is urged that the judgment was obtained as a result of constructive fraud, and therefore the plaintiff is entitled to relief from the judgment in the foreclosure proceeding.

It is said that the proof fails to establish the insolvency of the estate. Plaintiff filed a claim against the estate for $22,747.91. The defendant Boos signed the petition for the appointment of an administrator, wherein she recited that the property of the estate consisted of an undivided one-half interest in and to forty acres of land, which is the same land as was described in her mortgage and which did not exceed in value $1,075. In filing the application for the appointment of an administrator, defendant Boos was duty bound by statute to state the value and character of the property of the estate. (Sec. 10074, Rev. Codes.) Evidence appears in the record that a contract for the sale and purchase of a placer mining claim

or claims was outstanding, wherein the purchaser agreed to pay $4,500, which was held by the bank as collateral security to its indebtedness; also a block of mining stock is likewise so held. Nothing is found in the record giving the slightest intimation as to the value of this stock. No notice to creditors was ever given. Counsel who, on cross-examination, elicited the proof as to the land contract and the mining stock, had been the attorney for the deceased in his lifetime. He prepared the petition for the appointment of the administrator. He was the attorney for the plaintiff in the foreclosure proceeding and at one time had been the attorney for the bank. He made no effort to offer any proof which would indicate the value, if any, of this mining stock. A fair conclusion from the evidence is that the estate was prima facie insolvent.

One seeking relief in equity from a judgment procured through constructive extrinsic fraud need only show that he has a prima facie meritorious defense. (*Stocking* v. *Charles Beard Co.*, 102 Mont. 65, 55 Pac. (2d) 949; *Bullard* v. *Zimmerman*, 82 Mont. 434, 268 Pac. 512; Id., 88 Mont. 271, 292 Pac. 730; *Kirby* v. *Hoeh*, 94 Mont. 218, 21 Pac. (2d) 732.)

In *Leffek* v. *Luedeman*, supra, we said: ''It is the contention of the plaintiff that, under the rule announced in the foregoing decisions of this court, section 8267 is without application in this case, as the administrator stands in no different position from that in which the mortgagor would have found himself, had he been the party defendant. The defendant contends that, the estate being insolvent, the administrator is the representative of the creditors and, as such, stands in the same position as a creditor who has secured a lien on the premises by process after the lapse of time specified in section 8267, and therefore in a position to attack the validity of the mortgage. As a general rule an administrator acquires no better title than the decedent had. It is also true, as a general rule, that without a judgment or other legal process, or without a right recognized by law to have the property of a debtor seized and sold for his benefit, a creditor is not in a position to assert his rights against a mortgage which is void as to creditors.'' We then reviewed

the many statutory provisions relating to the administration of estates, and concluded as follows: "It is apparent from the foregoing provisions that a creditor, after the death of his debtor, is prevented from securing through legal process a specific lien upon decedent's property. The rights and interests of a creditor are to be determined and satisfied in the administration proceedings in the court. The legal effect of these statutory provisions is clearly to render the property of the estate bound for the payment of debts so far as it will go. The administrator of an insolvent estate represents the creditors, and only technically represents the heirs.'' After a review of many decisions, we then declared: "We therefore conclude that the executor or administrator of an insolvent estate may assert the invalidity of a real estate mortgage where no affidavit of renewal had been filed in accordance with the provisions of section 8267, and that the mortgage here under consideration was, as against the administrator, invalid and void.''

It was conceded, in the briefs and argument in the *Leffek* ▮ *Case,* supra, by counsel that a general creditor could not assert the invalidity of a mortgage unless he had fastened a lien on the mortgaged property. This court has long been committed to the rule, in cases where it was sought to set aside conveyances as fraudulent by a general creditor, that before any relief can be afforded such creditor must secure a lien by some process upon the property conveyed. (*Westheimer* v. *Goodkind,* 24 Mont. 90, 60 Pac. 813; *Wyman* v. *Jensen,* 26 Mont. 227, 67 Pac. 114; *Bowen* v. *First State Bank,* 69 Mont. 223, 221 Pac. 527.)

It is here suggested that this rule does not obtain since the plaintiff was a party to the foreclosure suit. In 1 Wiltsie on Mortgage Foreclosure, fourth edition, at page 662, it is said: "It is well settled that a mere general creditor without any specific lien, although made a party defendant in a suit to foreclose a mortgage on the debtor's property, for the determination of a lien claimed by him, cannot question the validity of the mortgage. The mortgage cannot be legally questioned by such defendant, until he clothes himself with a judgment and ex-

ecution, or some legal process against the debtor's property, for the reason that creditors cannot interfere with the property of their debtors without process." (See, also, *Wolcott* v. *Ashenfelter*, 5 N. M. 442, 23 Pac. 780, 8 L. R. A. 691.)

A general creditor, without a lien on the mortgaged real estate, cannot intervene in the foreclosure proceeding. (19 R. C. L. 536; 3 Jones on Mortgages, 296; *Wightman* v. *Evanston Yaryan Co.*, 217 Ill. 371, 75 N. E. 502, 108 Am. St. Rep. 258, 3 Ann. Cas. 1089, and note.)

The plaintiff, as a general creditor with no lien on the property of the estate, was in no position in the foreclosure proceeding to assert the invalidity of the mortgage.

Our attention has been called to the case of *Equitable Trust Co.* v. *Great Shoshone Co.* (D. C.), 228 Fed. 516, as announcing this· rule. But under the facts in that case the rule there announced is in exact accord with what we said in *Leffek* v. *Luedeman,* supra, under a like situation. Our attention has also been called to a number of additional cases containing statements supporting a contrary view, but they all involve persons who had an interest or lien in or upon the mortgaged property and not a general creditor. These cases can be of no persuasive influence here, for if plaintiff was a creditor with a lien upon the mortgaged property, the rule then would be otherwise.

The defendant administrator was a friend of Theresia Boos, and at her request he consulted with her counsel after the death of Jones, to see if the matter of the mortgage could not be settled. After discussing the matter with counsel, he consented to be appointed administrator of the estate of Jones. When he was served with summons as such administrator, he consulted with the same counsel, who then appeared for plaintiff in the foreclosure suit, and he advised him that all he could do was "to put my signature to whatever papers were necessary." He made no investigation of the facts set forth in the complaint. He consulted no other attorney aside from counsel for plaintiff in that suit. He testified: "I understood from my own knowledge that the mortgage itself was outlawed but the note was not." The administrator was advised that the heirs of the

deceased were willing for the property to be foreclosed upon and desired no defense to the suit. He apparently gave no thought to his duty as to the other creditors.

The plaintiff here made no demand upon the defendant administrator that he interpose the defense of the statute of limitations. The trial court found that if such a demand had been made it would have been of no avail, and therefore was useless. No other findings on the subject can be reasonably inferred from the evidence in the record. It was the duty of the administrator to interpose the defense afforded by the statute (sec. 8267), and thereby assert the invalidity of the mortgage. (*Pincus* v. *Davis*, 95 Mont. 375, 26 Pac. (2d) 986.)

The conduct of the administrator in failing in any manner to determine whether the mortgage was a valid and enforceable lien and to make any effort to defend against the mortgage was constructively fraudulent as against the plaintiff and all other creditors similarly situated. This conduct on his part enabled the plaintiff in the foreclosure suit to secure judgment therein. Accordingly, this case comes within the ruling of the cases of *Stocking* v. *Charles Beard Co.*, *Bullard* v. *Zimmerman*, and *Kirby* v. *Hoeh*, supra.

Judgment affirmed.

ASSOCIATE JUSTICES STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, did not hear the argument and takes no part in the above decision.

MR. JUSTICE ANGSTMAN, Dissenting:

The legal question here presented is: May a general creditor of an estate, which we will assume is insolvent, who was named as a defendant together with the administrator, in an action by another creditor to foreclose a real estate mortgage, after permitting the action to go by default, have the judgment set aside to enable him to plead the statute of limitations when he offers no excuse for permitting his default to be entered other than that he relied upon the administrator to plead the statute?

It is important first to note that there was no evidence introduced at the hearing showing, or even suggesting, that plaintiff here, who was a defendant in the foreclosure action, was prevented from filing an answer in the foreclosure action because of any promise on the part of these defendants, or anyone else, so as to bring the case within the facts in *Bullard* v. *Zimmerman*, 82 Mont. 434, 268 Pac. 512, Id., 88 Mont. 271, 292 Pac. 730, *Kirby* v. *Hoeh*, 94 Mont. 218, 21 Pac. (2d) 732, *State ex rel. Clark* v. *District Court*, 102 Mont. 227, 57 Pac. (2d) 809, and *Stocking* v. *Charles Beard Co.*, 102 Mont. 65, 55 Pac. (2d) 949.

Plaintiff here takes the position that it was the duty of the administrator to plead the statute of limitations as against the mortgage, and that his failure to do so constituted constructive fraud against the creditors of the estate. This conclusion does not follow under every conceivable set of facts. Thus, if the estate is solvent the creditors would have no interest in the question as to whether a mortgage held by one creditor has expired by limitations; they would all be paid in full. Even the heirs of a solvent estate, who eventually inherit the property after payment of the debts, would have no object in resisting a mortgage on this ground, if the debt itself is not barred, as here. They can procure a satisfaction of the mortgage by causing the debt to be paid. Here there is no showing that the estate is insolvent. The word ''insolvent'' does not appear throughout the entire record in this case. My associates, notwithstanding this fact, have without the slightest difficulty determined that the estate is prima facie insolvent. They do so by saying that plaintiff has filed a claim against the estate for $22,747.91, and that the record does not show the value of certain property of the estate. These statements are correct, but they do not prove insolvency. It is axiomatic that the burden of proof of insolvency is upon the party who bases his right thereon, here the plaintiff. Obviously, unless the estate be insolvent, plaintiff has no interest in the question of the validity of the mortgage.

I do not, however, rest my opinion of the merits of this controversy upon lack of proof of insolvency. In considering the

question here involved, I shall treat the estate as insolvent. Under such circumstances the administrator has the right to plead the invalidity of the mortgage for the benefit of all creditors. (*Leffek* v. *Luedeman*, 95 Mont. 457, 27 Pac. (2d) 511, 91 A. L. R. 286.) But has he any greater duty in that regard than a creditor who is brought into the foreclosure case as a party defendant?

Plaintiff here asserts, and the majority hold, that it was without right as a defendant in the foreclosure action to plead that the mortgage had expired by limitations. With this I do not agree. I think it was incumbent upon it to plead the facts in that action showing that the mortgage had never been renewed or extended, that it had expired by limitations, and that in consequence of the insolvency of the estate, if such be the case, it had an interest in the property along with other creditors; such interest being that of having the property applied in satisfaction *pro tanto* of all claims of all creditors, rather than being consumed in the granting of a preference to one creditor. The case of *Leffek* v. *Luedeman*, supra, actually settles this question against plaintiff's contention and contrary to the majority opinion here. The plaintiff in that action contended that the defendant, administrator of the estate, stood in the shoes of the decedent, the mortgagor, and since the mortgage was good as between the mortgagor and mortgagee, the administrator, who had only the same rights as the mortgagor, could not attack it. The reason why we did not adopt that contention was because the estate there involved was insolvent. When that is so, we properly held that the administrator represents the creditors. We said, "The administrator of an insolvent estate represents the creditors, and only technically represents the heirs, as the latter have no real interest in the estate." The fair implication from this was that, the estate being insolvent, the creditors have a real interest in the property of the estate.

In the *Luedeman Case*, which was brought by plaintiff there against the administrator, in addition to what is quoted in the majority opinion we further said: "This suit, therefore, is substantially a suit between the plaintiff and the creditors of the

decedent, who cannot in any manner, by any legal process, secure a specific lien upon the property of the estate." The fact that the creditors were unable to obtain a specific lien by legal process, the mortgagor being dead, was the very reason why we held it was not necessary for the creditor to have such a lien before he could assert the invalidity of the mortgage. The basis of the *Leffek* v. *Luedeman* decision is that the administrator of an insolvent estate steps into the shoes of the creditors. If the creditors have the right to assert the invalidity of the mortgage, then he, as their representative, may do so. If the creditors may not, then he may not, because he, as the representative of the creditors, may only assert such rights as they themselves possessed, and acquires no greater rights.

My associates quote from 1 Wiltsie on Mortgage Foreclosure, page 662, and cite certain other cases and authorities which assert the general rule that a creditor at large, without a lien on the mortgaged real estate, cannot attack the validity of the mortgage. All of these authorities have to do with a situation where the mortgagor is still alive. In such a situation a creditor can proceed to reduce his claim to judgment or levy an attachment and obtain legal process. He cannot do this after the mortgagor is dead. I agree with all the authorities relied upon by my associates on this point. We agreed in the *Leffek* v. *Luedeman Case* that that was the general rule. The distinction arises when the mortgagor is dead. In such a situation the creditor cannot obtain a lien upon the property and, consequently, if the estate be insolvent, we there held, and I think properly, that the general rule is inapplicable.

It has been held that general creditors, after the appointment of a receiver, have a sufficient interest in the property of an insolvent estate to enable them to question the validity of a mortgage sought to be foreclosed. (*Equitable Trust Co. of New York* v. *Great Shoshone etc. Co.*, (D. C.) 228 Fed. 516, and cases therein cited.)

In *Re Claghorn's Estate*, 181 Pa. 600, 37 Atl. 918, 920, 59 Am. St. Rep. 680, it was said: "It follows that, when the fund is not sufficient to pay all, each creditor has a right to oppose any

other claimant, by showing payment of the debt, or that it is barred by the statute of limitations."

In *Smith* v. *Pattie*, 81 Va. 654, the court said: "It is competent to any party interested in a fund to take advantage of the statute [referring to the statute of limitations], and this notwithstanding the executor of a deceased party refuses to do so."

Hence, while the administrator had the right to plead the statute (*Leffek* v. *Luedeman*, supra), and perhaps could not as the representative of the creditors waive the statute of limitations as to them (compare *Pincus* v. *Davis*, 95 Mont. 375, 26 Pac. (2d) 986, and *Fontana Land Co.* v. *Laughlin*, 199 Cal. 625, 250 Pac. 669, 48 A. L. R. 1308), although the contrary has been held (*Woods* v. *Irwin*, 141 Pa. 278, 21 Atl. 603, 23 Am. St. Rep. 282), yet there is nothing to prevent a creditor from himself waiving the benefit of the statute. Anyone may waive the benefits of a law enacted for his protection (*H. Earl Clack Co.* v. *Staunton*, 105 Mont. 375, 72 Pac. (2d) 1022), and this is true of the statute of limitations which is universally regarded as a personal privilege which may be waived (24 C. J. 299, notes 42 and 43; *Reay* v. *Heazelton*, 128 Cal. 335, 60 Pac. 977), and a person may be estopped from pleading it. (24 C. J. 304.)

Therefore, were I to concede that the administrator had no right to waive the statute as against creditors, this would not help plaintiff, for here plaintiff did so for itself by permitting the foreclosure action to go by default, and offers no excuse for so doing other than that it relied upon the administrator to plead the statute. There is no claim that the administrator had promised to do so, or that he did any affirmative act leading plaintiff to believe that he would plead the statute, but plaintiff's only claim is that he should have done so as the representative of the creditors.

Reduced to its last analysis, my associates hold that plaintiff has a right to complain because the administrator did not use more diligence than it did in looking after its rights. The court in the case of *Lindquist* v. *Maurepas Land & Lumber Co.*, 112 La. 1030, 36 So. 843, 848, in a proceeding much the same as this, made use of language which has application here. It

said: "Defendant, though cited, and having, as he acknowledges, then the same rights as he has now, thought proper to make no appearance and let the case go to judgment  He did not advise the court of any such right as he now sets up, and raised no objection to the authority of the court to act in the premises. *  *  *  He says that he could not have set up title at that time, as he did not have any.  That was true, but he could none the less have set up an outstanding title in the state, and advanced his existing real rights in respect to the property, predicated upon the same state of facts which he now contends for.  If it be permissible for him to advance these rights now, with final judgment standing interposed as a bar to his doing so, it was permissible for him to have done so then, for the situation has in no manner changed, save as to the intermediate judgment which has been rendered.''

Having been brought into the case as a defendant, the bank is concluded by the judgment rendered therein, for any other rule would permit a party to an action to determine for himself whether he was a proper party and whether disputed priorities could properly be adjudicated in the action.  (*Cowles* v. *Kyd,* 91 Neb. .274, 135 N. W. 1010.)

In the foreclosure action the bank was made a defendant and the charge was made in the complaint that it claimed some interest in the property, the subject-matter of the foreclosure action.  The charge was made that whatever interest the bank had was inferior to the rights of the mortgagee.  The bank's failure to appear in that action operated as a confession of the claims of the mortgagee.  The bank then had as much interest in defeating the mortgage as it now has.  It could have proved its interest then as easily as now.  I think it was incumbent upon the bank in the foreclosure action to set out its claim that it was a creditor, that the estate was insolvent, and that the mortgage was invalid.  Having failed to do so, it is now estopped from so doing.  (Compare *Glide* v. *Dwyer,* 83 Cal. 477, 23 Pac. 706; *Southard* v. *Smith,* 8 S. D. 230, 66 N. W. 316; *Free* v. *Beatley,* 95 Mich. 426, 54 N. W. 910; *Honaker* v. *Cecil,* 84 Ky. 202, 1 S. W. 392.)

A case practically identical on the facts is that of *Corbey* v. *Rogers*, 152 Ind. 169, 52 N. E. 748, 749. That action was for the foreclosure of a mortgage. In addition to the mortgagor a third party, Corbey, was named as a defendant. The complaint alleged that "Corbey claims to have some interest in said estate, but, if he has any interest, it is subject to plaintiff's mortgage lien, and said defendant therefore is made a defendant to answer as to his interest so claimed." The court said: "It is the rule in this state that such a complaint challenged the appellant Corbey to set up his claim, if any, superior to the mortgage, and on failure to do so he is precluded by the judgment and decree from ever after claiming any right in the mortgaged property superior to the mortgage so foreclosed." In that case Corbey pleaded the statute of limitations as a bar to the foreclosure of the mortgage, but he did not set forth the interest he claimed in the real estate. The court on this point said: "It was incumbent on appellant, in addition to the allegation of the statute of limitations, to aver facts showing that he had such interest in the real estate described in the mortgage as entitled him to the benefit of said statute of limitations, and no such facts are set forth in said paragraph. If the complaint had set up the facts showing that Corbey had an interest in said real estate, and what that interest was, it would not have been necessary to set forth such facts in the third paragraph of the answer. When, in a case like this, facts concerning the interest of a defendant in the real estate are not set forth in the complaint, he must set them up in his answer. (*Mann* v. *State*, 116 Ind. 383, 19 N. E. 181.)" The fair implication from that decision is that if the creditor shows wherein his rights will be adversely affected by the foreclosure, he may plead the statute. To the same effect are *Lincoln Mortgage & Trust Co.* v. *Parker*, 65 Kan. 819, 70 Pac. 892; *Blair* v. *Silver Peak Mines*, (C. C.) 84 Fed. 737; *New Albany Bank* v. *Brown*, 63 Ind. App. 391, 114 N. E. 486.)

When an estate is insolvent each creditor is an adverse claimant to every other creditor. The claim of each is hostile to the claims of others. (*Lombard Investment Co.* v. *Seaboard Mfg.*

*Co.*, (C. C.) 74 Fed. 325.) The assets of the insolvent estate constitute a trust fund for the benefit of all creditors, and to all intents and purposes the creditors have an equitable lien thereon. ''Doubtless, in such foreclosure suit, the simple contract creditor can intervene, and if he has any equities in respect to the property, whether prior or subsequent to those of the plaintiff, can secure their determination and protection.'' (*Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371, 14 Sup. Ct. 127, 128, 37 L. Ed. 1113.) Since plaintiff here, if the estate be insolvent, had the right to plead the statute of limitations in the foreclosure action, as a defendant therein, and no excuse appearing here why it did not do so, the judgment in that action must stand.

It should be remembered, too, that an administrator of an estate represents all the creditors. Theresia Boos, when she commenced her action to foreclose the mortgage, was a creditor of the estate. The bank, as a party defendant to that action, was put on notice that the administrator would be placed in the position of representing conflicting interests. It then knew that its interests conflicted with those of Theresia Boos. So far as this record shows, it did not even ask the administrator to plead the statute of limitations. Had it done so and been met with a refusal to do so, no one would have the hardihood to contend that it would have been remediless. It could have proceeded as it is doing now.

I am aware of the rule, and am in accord with it, that courts favor the trial of actions on their merits, and that a greater showing of abuse of discretion must be presented before this court will interfere with the action of the trial court in setting aside a default judgment, than in refusing to do so. However, in this case there was, in my opinion, nothing before the court to move its discretion. There was no attempt to show that the judgment in the foreclosure action was entered through mistake, inadvertence, surprise, or excusable neglect. No fraud was practiced upon plaintiff by which it was induced to neglect the action. The sole question on the application was one of law, viz.: Whether plaintiff here, as a defendant in the foreclosure

action, could have asserted the defense which it now proposes. I think it could have done so and, no excuse appearing for not doing so, I think the court erred in setting aside the judgment.

In considering the question before us I have not overlooked the point that a judgment will not be set aside except on a showing that the moving party has a meritorious defense on the merits. I have assumed that the plea of the statute of limitations presents a "meritorious defense on the merits," a question concerning which there may be considerable doubt. I do not express any opinion on that point, since the question is not argued in the briefs of counsel.

When the majority opinion in this case is read and considered in conjunction with that in the case of *Rieckhoff* v. *Woodhull*, ante, p. 22, 75 Pac. (2d) 56, the conclusion is inevitable that my associates regard two things as quite sacred: One is the judgment of a court, and the other is the statute of limitations, and of the two, the latter is the more so.

I think the order appealed from should be reversed.

Rehearing denied March 26, 1938.